## DECATUR COUNTY *v.* BAHNSEN, State Veterinarian.

1. The petition set forth a cause of action, and the court below erred in sustaining the demurrer thereto.

2. The judgment complained of in the cross-bill of exceptions is affirmed.

Nos. 5778, 5779.  June 22, 1927.

Petition for mandamus.  Before Judge Littlejohn.  Sumter superior court.  November 23, 1926.

*H. G. Bell* and *James A. Fort,* for plaintiff.

*Stephen Pace,* for defendant.

HINES, J.  By the act of August 27, 1925 (Acts 1925, p. 47), the General Assembly provided "that for the purpose of constructing and paying for a double line, cattle-proof fence and cattle-guards on the highways on the Georgia-Florida State line in the counties of Charlton, Clinch, Echols, Lowndes, Brooks, Thomas, Grady, and Decatur, to prevent reinfestation of Georgia with the cattle-fever tick, the sum of one hundred thousand ($100,000.00) dollars, or so much thereof as may be necessary, be and the same is hereby appropriated."  This act further provides that "The fence and cattle-guards, if not already constructed, shall be built or contracted for by the respective board of county commissioners of each county named, at the lowest competitive bid consistent with serviceable construction."  The act then provides that "It shall be the duty of the State Veterinarian to designate the parts of counties where such fence and cattle-guards are necessary, to inspect, and if properly constructed to approve to each board of commissioners and to the State Auditor the fence and cattle-guards after they have been completed."

Decatur County, through its board of commissioners, filed its petition on October 21, 1926, against the State Veterinarian, in which the following allegations were made:  Said county was declared by said officer to be subject to cattle-tick infestation, and cattle-dipping had been required in said county from 1919 until May 31, 1926, except during August and September, 1924.  The southern portion of said county is along the line forming the boundary between Georgia and Florida.  Said county, by its proper authorities, has repeatedly requested Peter F. Bahnsen, the State Veterinarian, to designate the parts or portions of Decatur County, along the said line, that should be fenced and where cattle-guards should be placed on roads in accordance with the above act.  Said officer has refused to designate the portions of said county over which the said line fence should be built, as provided by said act, and refuses to build said fence that will comply with said statute

in reference to the same, after said repeated requests. Said county has expended large sums of money in eradicating the cattle-fever tick in said county. Said county is exposed to tick-infested territory along the Florida line. Said State Veterinarian has built fences along the State line of the other counties, referred to in said act. He refuses to allow or authorize the building of said fence by Decatur County, as provided in said act. Petitioner prayed that said officer be compelled by mandamus to designate the line between the State of Georgia and the State of Florida which is the southern boundary of Decatur County, to build a fence thereon, and place cattle-guards at the proper places on the same as required by the above act.

To this petition the defendant demurred upon the grounds: that it set forth no cause of action; that the facts alleged were insufficient to entitle petitioner to the writ of mandamus; because it is not alleged that said fence and cattle-guards are necessary to prevent reinfestation of Georgia with cattle-fever ticks; because it is not alleged that the border counties of Florida, adjoining Decatur County, have not completed tick eradication, and that the State of Florida does not maintain an effective State quarantine within such tick-free counties in Florida to safeguard the State against reinfestation; because it is not alleged that petitioner pledges and obligates itself to maintain such fence and cattle-guards in first-class condition for a period of five years; because it is not shown in the petition to what portion of the Florida line Decatur County is exposed; and because it is not alleged that enough of the appropriation made by said act remains to construct said fence and cattle-guards. The court sustained the demurrer and dismissed the petition. To this judgment the County of Decatur excepted.

The controlling question involved in this case is, whether or not the State Veterinarian is vested by this act with authority to say whether the fence provided for in this act shall be built. If a public officer has an absolute discretion to act or not, mandamus will not lie, unless there is a gross abuse of such discretion. *Wood* v. *Board of Education,* 137 *Ga.* 808 (74 S. E. 540). What discretion, if any, has the State Veterinarian under this act? Is he clothed thereby with the power to determine whether the fence along the Florida State line, in the counties named, shall or shall

not be built? By the act of 1925, the State appropriated $100,000 for the purpose of constructing and paying for a double-line cattle-proof fence and cattle-guards on the highways on the Georgia and Florida State line, in the named counties, including Decatur County, "to prevent reinfestation of Georgia with the cattle-fever tick." By this action the legislature clearly determined that the building of this line fence and cattle-guards was necessary to prevent this State from becoming again infested with cattle-tick. This act then declares that "the fence and cattle-guards . . shall be built or contracted for by the respective board of county commissioners of each county named." The legislature has thus determined the necessity for the building of a line fence along the Georgia and Florida State line in the counties named, and has commanded that the fence and cattle-guards shall be built by the respective boards of county commissioners themselves or by contract. Judicial cognizance will be taken of the fact that the counties in Florida adjoining these counties in Georgia, are tick-infested. These Georgia counties have gone to large expense in eradicating the cattle-fever tick from their borders. All this work would be useless if cattle from Florida are permitted to come into these counties and reinfest the Georgia counties which have been freed from tick. Under these circumstances the legislature declared that it was necessary to fence the border line to prevent this reinfestation of these Georgia counties, and appropriated money to have a fence built upon the State line which forms the boundary line of the counties and the State of Florida.

But it is insisted that the provision in the first section of this act, to wit, "It shall be the duty of the State Veterinarian to designate the parts of counties where such fence and cattle-guards are necessary, to inspect, and if properly constructed to approve to each board of commissioners and to the State Auditor the fence and cattle-guards after they have been completed," vests in this officer the absolute discretion to determine whether the fence and cattle-guards shall be built. This is not the proper construction of this language. It is one thing to determine whether this fence and these cattle-guards are necessary. This the legislature has done. That body has declared that the construction of this line fence and these cattle-guards is necessary to prevent this State from becoming again infested with cattle-tick. It is another and

different thing to designate "the parts of counties where such fence and cattle-guards are necessary." The fence must be placed upon the State line. The location of this line is an important matter. The location of a boundary line is often a difficult thing to do. This act imposes upon the State Veterinarian the duty of locating and pointing out this line. The act declares that he shall designate to the county authorities "the parts of counties," that is, the location where it is necessary to build such fence and cattle-guards. This is the thing which this officer has to do in connection with the construction of this fence and these cattle-guards. It is made his duty to designate this line; and when he does that, his connection with the matter is at an end, so far as the construction of the fence and cattle-guards is concerned. Not being clothed with the power to determine whether this fence and the cattle-guards should be erected, and it being made his duty to point out this line to the county authorities, so that the fence can be properly located, and having refused to do so, he can be compelled by mandamus to discharge this public duty. As the legislature has determined the necessity for the construction of this fence and these cattle-guards, it is not necessary for the petition to allege that their construction is necessary. It is not necessary for the petition to allege that there remains a sufficient amount of the appropriation for this purpose to authorize the building of this fence and these cattle-guards, and that the county will keep them up for five years. The petition in effect alleges that the Florida territory adjoining Decatur County is tick infested.

Being required to perform a plain public duty, and having refused to perform it, this officer can be compelled by mandamus to discharge it. And as the petition makes a case for the grant of this writ, the court below erred in sustaining the demurrer thereto and dismissing the same.

*Judgment reversed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*